UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | Case Nos.: |
| | ) | |
| FURNAS COUNTY FARMS; | ) | 04-81489 |
| 7-11 PORK FOODS, INC.; | ) | 04-41890 |
| ARAPAHOE FEED MILL, L.L.C.; | ) | 04-81491 |
| FURNAS COUNTY FARMS MARKETING | ) | 04-81492 |
| COMPANY, L.L.C.; and | ) | |
| FURNAS COUNTY TRUCKING, L.L.C., | ) | 04-81494 |
| | ) | Chapter 11 |
| Debtors. | ) | |

## AFFIDAVIT

STATE OF NEBRASKA   )
                    ) ss.
COUNTY OF PLATTE    )

STEVEN WEISS, being first duly sworn upon oath, deposes and states as follows:

1. I am of legal age and competent to give this affidavit.

2. I am employed by Comprehensive Consulting Solutions, L.L.C., an Iowa limited liability company ("Solutions").

3. Prior to the filing of the bankruptcy petitions herein, Solutions was employed by Sand Systems, Inc. to perform management consulting services for the Debtors, including monitoring the Debtors' business and consulting as to the management of the hog production business of the Debtors, which includes the breeding, raising, feeding, health maintenance and transportation of live animals. In my capacity as manager of Solutions, I became knowledgeable as to the Debtor's vendors, financial statements, creditors and other business matters. The remaining paragraphs of this Affidavit are based on such knowledge and are accurate to the best of my knowledge and belief.

00158249                          1

4. The vendors of the Debtors include farmers and truckers as well as other suppliers. At any given period of time, the Debtors' received goods and services from approximately 1200 vendors.

5. The Debtors have contracted with various farmers to deliver grain to the Debtors for use in the feeding of livestock. The Debtors have purchased grain from approximately 130 farmers. The Debtors have also contracted with approximately 20 truckers to deliver livestock among its various production facilities and to Hormel in Fremont, Nebraska.

6. At any given time, the Debtors have in their care and control approximately 430,000 head of hogs. Based on the most recent United States Department of Agriculture reports, this represents approximately 15% of all animals (hogs) in the State of Nebraska.

7. As of the time of filing the bankruptcy petitions herein, the Debtors have 375 employees.

8. The Debtors have annual sales of approximately $80,000,000. The book value of Debtors' assets at the time of the filing, reflected in accordance with generally accepted accounting principles, were approximately $97,000,000.[1]

9. The Debtors have secured debt to banks in the amount of approximately $116,900,000 which is senior to all other debt and which has unpaid interest due to such banks in the approximate amount of $10,000,000.

10. In addition to the aforementioned secured bank debt and interest, the Debtors have approximately $70,000,000 in other liabilities.

---

[1] Debtors have been negotiating an asset purchase agreement in the amount of $50,000,000 for the purchase of the assets.

Affidavit of Steve Weiss (00158249)         2

11. The current average expense per month for grain purchased from farmers is approximately $600,000, for truckers approximately $200,000 and for other expenditures approximately $5,700,000.

12. In addition to the aforementioned expenses, the Debtors have payroll expenses, every two weeks, for 375 employees in the average amount of $310,000.

13. The Debtors are in the business of producing hogs in Nebraska, Iowa and South Dakota for sale in Nebraska. Any interruption in the marketing efforts or the care and feeding of the hogs will be detrimental to the Debtors' operations and could result in significant mortality or morbidity losses for Debtors' livestock.

14. I am aware of vendors, farmers and truckers in the areas of operation of the Debtors. I believe that it is critical to the Debtors' the business to maintain the supply of goods and services from the Debtors' current vendors, farmers and truckers to avoid significant disruption and/or economic cost to the Debtors as a result of an inability to expediently and economically procure the feed, medicine and other necessary supplies and services which are necessary for the care of livestock and to operate the Debtors' business.

15. It is my belief that in the event that the vendors, including the farmers and the truckers, do not receive payment for a substantial portion of goods supplied and services rendered within ten (10) business days of the filing of the bankruptcies, that they will not continue to do business with the Debtors, which would be detrimental to the Debtors and could cause losses of livestock and a decrease in the value of the assets of the Debtors.

16. I believe that the approximate pre-petition amount owed to farmers supplying crops to the Debtors is $450,000.

17. I believe that the approximate pre-petition amount owed for transportation services provided by truckers is $50,000.

18. I believe that the potential amount of claims made by Continuing Vendors, as defined in the FTC Motion, will most likely exceed $1,600,000.

19. The Debtors are engaged in a business that requires the continuous work of the employees. These employees are crucial to the survival of the Debtors' livestock and the preservation of the value of the Debtors' business. The Debtors' ability to preserve their business and assets are directly dependent upon retaining the services of their employees. Accordingly, it is essential that the morale of the employees be maintained.

20. All salary and hourly employees are paid on the 15th and the last day of each month. Employees received checks for wages on April 30, 2004. As of the filing date there exists a segregated account for the payment of these employment checks. This account is located at US Bank. The accrued wages as of the filing date are approximately $60,000.

21. The Debtors currently provide and the employees partially contribute to a health insurance plan and a term life insurance plan. At the time of filing, the Debtors were most likely in possession of funds belonging to employees that should be paid to the health and term life insurance carriers. To maintain the Debtors employees, it would be my recommendation that the Debtors continue the health and term life insurance coverages for employees on an uninterrupted basis. The pre-petition insurance payments to be paid is approximately $5,000.

22. The Debtors currently provide a Section 125 plan for the deduction of health insurance premiums from an employee's pay. At the time of filing, the Debtors were most likely in possession of funds belonging to the Debtors' employees. The estimated amount of pre-petition money being held by the Debtors in the Section 125 plan is approximately $5,000.

23. The Debtors currently provide, administer and contribute to a retirement plan for employees. The estimated amount of pre-petition payments due to the retirement plan by the Debtors is approximately $15,000.

24. The estimated amount of pre-petition money being held by the Debtors for employee paid benefits is approximately $10,000.

25. The Debtors have employees who have amounts deducted from their payroll checks pursuant to child support and creditor garnishments. The estimated amount of pre-petition money being held by the Debtors for garnishments is approximately $1,000.

26. The Debtors reimburse employees for out-of-pocket expenses incurred in the course of the normal business operations of the Debtors and certain of the Debtors' employees use company credit cards, issued through US Bank, for such expenditures. The estimated amount of pre-petition money owed to employees and to US Bank for reimbursable expenses is approximately $10,000.

27. It is further my understanding that the present Bank lenders of the Debtors which hold liens against the Debtors' property have agreed, subject to obtaining an order from the court, to allow the Debtors to use cash collateral and to further advance funds to the Debtor under the provisions of a Debtor-in-Possession loan agreement for the payment of the Debtors' operating expenses, including the aforementioned pre-petition obligations relating to employee compensation and benefits and the pre-petition obligations of the Debtors to truckers (estimated at $50,000), farmers (estimated at $450,000) and vendors who have provided goods and services to the Debtors within 10 business days of the filing (not to exceed $1,600,000).

FURTHER AFFIANT SAYETH NOT.

DATED: May 3, 2004.

_____
Steven Weiss

SUBSCRIBED AND SWORN to before me this third day of May, 2004.

GENERAL NOTARY - State of Nebraska
AMBER A. STONE
My Comm. Exp. Oct. 7, 2007

_____
Notary Public